LEAVITT *v.* MARATHON OIL COMPANY.

4-2899

Opinion delivered March 6, 1933.

*W. L. Curtis,* for appellant.

*Henry E. Spitzberg,* for appellee.

BUTLER, J. This is a suit by the appellee for judgment for debt evidenced by promissory notes and for foreclosure of a mortgage on personal property, being certain filling stations and equipment executed by the makers, appellants.

The defense relied upon is alleged in paragraphs 12, 13 and 14 of the answer. A general demurrer was filed to the answer and a specific demurrer to paragraphs 12 and 13, and the court, treating the general demurrer as a specific demurrer to paragraph 14, sustained the demurrers as to each of these paragraphs, the defense of the alteration of the mortgage set forth in the first section of paragraph 12 of the answer being waived. The defendant saved proper exceptions to this action of the court, and, refusing to plead further, judgment was rendered against them for the debt and accrued interest and

for foreclosure of the mortgages, and from that the defendants (appellants) have appealed.

The nature of the transaction whereby the debt was incurred sufficiently appears in the following paragraph of the answer:

"11. Further answering, these defendants state that on or about the 5th day of January, 1931, the defendant, W. Q. Leavitt, was the owner of a certain filling station, bulk sales station and the equipment incident to and necessary for the operation of said station, located and being in the city of Booneville, and county of Logan and State of Arkansas; that said equipment was, at the time, of the reasonable value of $7,500.

"12. That on said date the said defendant, W. Q. Leavitt, being in need of funds, negotiated a loan on said plants and equipment for the sum of $3,500, which was evidenced by five promissory notes of $700 each with 6 per cent. interest thereon, said notes to become due and payable in one, two, three, four and five years from date, and that, to secure the payment of said loan, and as a part and parcel of same transaction, made out and executed and delivered to said plaintiff a chattel mortgage on said retail and wholesale oil and gas stations and the equipment connected therewith, and that said chattel mortgage, together with the notes referred to above, are null and void, first, for the reason that said chattel mortgage was materially changed after its execution and delivery to plaintiff by the insertion therein of the paragraph thereof which reads:

"Party of the second part may at its option purchase fire, tornado and theft insurance upon the property herein mortgaged, charging same to the account of the party of the first part, to be secured by the mortgage as an advancement; that said notes and mortgage are further void, for the reason that at the time of making said loan and the execution of the notes and mortgage referred to, and as a part of the same transaction, the said defendant made out and executed a lease agreement with the plaintiff upon the property described in said

lease and in said chattel mortgage, which said lease, among other things, provides for an annual rental for said property of $1 per month or $12 per year, with a further provision that said property was to be maintained and kept in good operating condition by this defendant, lessor, at his own necessary expense for five years, and it is this part of the entire contract which the paintiff is seeking to have enforced in this suit, since it is and constitutes, as hereinabove alleged, a part and parcel of the entire transaction with the exceptions hereinafter stated.

"13. That said lease contract, together with the notes and mortgage referred to herein are fraudulent and void,

"(a) Because they are unconscionable and are not such contracts as will be enforced by a court of equity.

"(b) Because the same, when construed together with the entire transaction, discloses that the value of said lease or rental upon said property, when added to the interest provided for in the notes and mortgage, produces a rate of interest for the life of the contract, or for any one year embraced therein, of a charge in favor of the plaintiff far in excess of ten per cent. on the amount of money loaned by plaintiff to the defendant, and therefore and for that reason is attainted with usury, and that by reason of said usury said note and mortgage as well as said lease contract are absolutely void.

"14. That, as an inducement to secure the execution of said notes and mortgage and said lease at the time and in the manner hereinabove stated, the said plaintiff, through its agents and representatives who negotiated said contracts with the defendant, W. Q. Leavitt, M. R. Springer falsely and fraudulently represented to the said W. Q. Leavitt that the $12 rental specified in said lease and the difference between 6 per cent. interest on the loan and of possibly 10 per cent. thereon to the plaintiff was not a sufficient sum to constitute a valid rental on the use of the property which plaintiff was securing under the terms of said lease, but that in addition thereto the plaintiff would allow the defendant the sum of one-

fourth of a cent per gallon on all gasoline handled or sold during the life of the lease by either the bulk sale or retail station covered by said lease, but for certain trade reasons he did not want to include said provision in said contract, but would subsequently have the plaintiff confirm said arrangement by letter, and that the defendant relying upon said representations of said plaintiff and its agents, was thereby fraudulently induced to sign said notes and said mortgage and said lease contract, and that, notwithstanding said understanding and agreement and inducement, thereafter said plaintiff wholly repudiated same and refused to confirm the same or to recognize the same in any way, thereby rendered all of said transaction null and void and of no force and effect.''

The first question to be determined is whether the allegations of paragraph 12 are sufficient to constitute the defense of usury. It is alleged that the lease contract set out was a part and parcel of the same transaction by which the loan was secured. This appellant contends is a sufficient plea upon which to found the defense of usury when there are other averments that the rentals on the property demised, when added to the six per cent. interest the notes carried, made a sum in excess of 10 per cent. per annum on the debt for the entire period before the due date of loan or any one year thereof. *Cammack* v. *Runyan Creamery Co.*, 175 Ark. 601, 299 S. W. 1023, is cited as supporting this contention. We do not so view that case, which was a suit on an alleged contract of employment, and which was successfully defended on the ground that no employment of the plaintiff was contemplated or any service rendered, but that the arrangement was merely a device to cover a usurious rate of interest on a loan of money made by the plaintiff, either as the principal lender or as his agent. In upholding the finding of the chancellor as not against the weight of the evidence, the court recited the settled principle that, to constitute usury, ''there must be an agreement between the parties by which the borrower promises

to pay and the lender knowingly receives a higher rate of interest than the statute allows for the loan or forbearance of money, or such greater rate of interest must be knowingly reserved, taken or secured for such loan or forbearance. And the wrongful act of usury will not be presumed or imputed to the parties, and it will not be inferred where the opposite conclusion can be reasonably and fairly reached.''

In the answer in the instant case there was no allegation from which the reasonable intendment could be drawn that a corrupt agreement existed between the parties that would bring its averments within the principle recognized in *Cammack* v. *Runyan, supra,* and which was necessary to a plea of usury. *Citizens' Bank* v. *Murphy,* 83 Ark. 31, 102 S. W. 697; *Bauer* v. *Wade,* 170 Ark. 1020, 282 S. W. 359.

It is the general rule, approved by this court, that an agreement for a loan is not usurious, even though the lender refused to make it unless the borrower would enter into another contract from which the lender might gain advantage, if the collateral agreement was fair and legal (*Simpson* v. *Smith Savings Society,* 178 Ark. 921, 12 S. W. (2d) 890), the reason for which is stated in the recent case of *Hogan* v. *Thompson, ante* p. 497, as follows: ''This is based on the principle that, since the law forfeits the entire loan and interest thereon for an exaction of usurious interest, however small, the intent to exact a usurious interest must be clearly shown and will not be inferred where, from the circumstances, the opposite conclusion can be reasonably and fairly reached.''

Therefore, the allegation that the lease contract was a part of the transaction of the borrowing of the money does not constitute a defense, in the absence of an allegation that the contract of lease was a device or cloak for usury which the lender intended to exact and the borrower to pay.

2. In determining the correctness of the court's ruling on the demurrer to paragraphs 13 and 14, the contention of the appellant raised in the second and third

part of counsel's brief may be considered under one head. The first is that the "lease contract as a matter of equity was either without consideration or was for such a gross inadequacy as to render the same void," and, next, that the lease contract was secured by the false representation that appellant would be paid one-fourth of a cent per gallon on all the gasoline sold on and through the demised premises. The answer to these contentions is that the suit of appellees does not involve the lease, but a recovery on notes evidencing money it loaned appellant and foreclosure of a mortgage given to secure the same. The fact that a lease was fraudulently procured would be no defense to a suit to recover appellee's debt or for foreclosure on the security, and, as pointed out by counsel for appellee, appellant did not allege any damage for the alleged failure to pay them one-fourth of a cent per gallon on gasoline handled through the filling stations leased or seek to offset the debt or any portion thereof on account of any damage sustained.

We are of the opinion that no defense was stated in the answer, and the chancellor correctly sustained the demurrer.

The decree is therefore affirmed.