Ora GIRLEY *v.* Warren WOOD,
Judge et al

75-58                                                  525 S.W. 2d 454

Opinion delivered July 7, 1975

*Griffin J. Stockley* and *Herman W. Eubanks*, for petitioner.

*Jack Sims*, for respondents.

JOHN A. FOGLEMAN, Justice. The only question involved in this petition for mandamus is whether we should require the circuit court to hold a more extensive hearing than it held on the right of Twin City Motors, Inc. to an order of delivery in a replevin action against petitioner. There is no question about the adequacy of notice and a hearing was held before the order was issued. Petitioner contends that when the suit is actually a possessory action by the assignee of the seller against the buyer of personal property based upon an alleged default by the buyer on an installment payment contract, the buyer has the right to introduce evidence to show that the transaction was actually usurious, even though it did not appear to be upon its face. We hold that such an extensive hearing is not so clearly mandated by Ark. Stat. Ann. § 34-2119, et seq (Supp. 1973) or by due process requirements of the Fourteenth Amendment to the United States Constitution that we can say that the trial judge's action in limiting the hearing as he did is so clearly erroneous that we can correct his action by mandamus.

The transaction involved a 1969 Buick automobile sold on July 10, 1974, by Capitol City Motors, Inc. to petitioner. The conditional sale contract was assigned by the seller to Twin City Motors, Inc. The replevin action was filed November 22, 1974. Twin City Motors, as plaintiff, sought an order of delivery, alleging that petitioner had defaulted in making payments, so that the delinquency amounted to

$199.26. Petitioner's objection and answer asserted the defense of usury. A counterclaim in the same pleading alleges violation of truth-in-lending laws. Petitioner's allegations simply stated the conclusion that the contract was usurious. Hearing on the matter was held under Ark. Stat. Ann. § 34-2119 et seq (Supp. 1973) on January 8, 1975, notice having been given under § 34-2123.

When petitioner's attorney sought to cross-examine the plaintiff's witness to show that the contract of sale was tainted with usury which did not appear upon the face of the contract, the circuit judge sustained an objection and refused to permit petitioner's attorney to make a proffer of evidence that he expected to adduce. The circuit judge authorized the order of delivery, or writ of replevin, upon the making of the statutory bond by the plaintiff, but provided that petitioner be accorded the right to furnish a redelivery bond. By this proceeding petitioner asks us to direct the circuit court to vacate the order of delivery and to grant petitioner a full evidentiary hearing by permitting her to present evidence to support her affirmative defense of usury.

At the inception of the hearing, the circuit judge had stated that the burden of showing usury was on petitioner and that the hearing was not designed to cover such factual questions in depth, so he would consider the question whether the contract was usurious on its face, but that the hearing would not be the same complete and exhaustive determination of issues to be eventually made by the fact finder on trial of the case. Thereupon, the plaintiff introduced the contract and evidence of default. The question presented here arose when petitioner's attorney sought to show that there was usury by reason of a credit life insurance provision that in case of death of petitioner before the debt was paid, plaintiff would receive from the proceeds of the insurance, in addition to the balance due upon the indebtedness at that time, a $50 item to be withheld from any remainder payable to petitioner's estate. There is no provision in the contract which states to whom the $50 is to be paid in the event petitioner should die before the debt is fully paid and the insurance proceeds should exceed the balance due. Insofar as the contract reflects, it might be paid to Capitol City Motors, to Twin City Motors, or retained by the insurance company.

It is the position of petitioner that the quartet of decisions by the United States Supreme Court relating to prejudgment seizures beginning June 9, 1969, hold that due process requirements mandate a full preseizure hearing on all defenses asserted by a defendant from whom possession of property would be taken by pretrial process. Our statute directs a hearing but the only specific requirement is that the plaintiff make a prima facie showing that he has the right to immediate possession of the property involved. Ark. Stat. Ann. § 34-2121 (Supp. 1973). There can be no question about the sufficiency of the evidence to meet this requirement in this case. We must then examine the authorities relied upon by petitioner to determine whether constitutional due process so clearly requires that petitioner be permitted to make a showing of usury not apparent on the face of the transaction, when there is no allegation of facts constituting usury, that we should grant the writ.

The first case is *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969). As clearly pointed out in the majority opinion, a factual situation requiring special protection of a creditor's interest in the property involved was not presented there. Unlike the situation in *Sniadach*, here there were both notice and an opportunity to be heard. That case is important here only to the extent that it influenced later decisions.

Next came *Fuentes* v. *Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972). It did involve replevin suits, some of which were based upon installment sales contracts. Its precedential impact is somewhat weakened by virtue of the fact that the four-member majority was less than a majority of the court, since two justices did not participate. Its effect must, in reality, be measured by the application made of it by the United States Supreme Court in later cases. It is notable, however, that in *Fuentes* the statutes held unconstitutional permitted prejudgment seizures of personal property upon ex parte application to one who was not a judicial officer, by a claimant other than the possessor, without notice to the possessor or opportunity to him to be heard at any prior hearing. By its own language, the *Fuentes* holding is a very narrow one. The issue was whether procedural due process in the

particular context required a hearing before the state seized the property for the benefit of a private party. In *Fuentes,* however, it was recognized that the requirement that the claimant make a bond to protect the possessor against a wrongful seizure, and the claimant's subjecting himself to liability in damages if he is wrong, are factors that may affect the type of hearing necessary to meet the demands of due process. It appears from the opinion that, at the very least, a repossessing seller must make a showing that the buyer has defaulted. The *Fuentes* court indicated that due process is satisfied by "a fair prior hearing" which provides a real test of the right of the creditor by the kind of hearing which is aimed at establishing at least the probable validity of the underlying claim against the alleged debtor.

The case of *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974) involving the Louisiana sequestration statutes is probably more closely related to that before us than any other decision of that court. The court there gave consideration not only to the seller's interest in the property which diminished as payments on the installment sales contract were made but also to the fact that the value of the property as security steadily diminished as the property was used. The court also recognized that resolution of due process questions must take account of the rights of both buyer and seller. There are many similarities here to *Mitchell,* where it was held that due process requirements were fulfilled by the Louisiana procedures affording a constitutional accommodation of conflicting interests of parties. Among them are:

1. The writ was not issued on conclusionary allegations of ownership or possessory rights.

2. The showing was made to a judge and the writ issued only upon his authority after the creditor had filed a sufficient bond.

3. The statute requires a hearing at which the creditor must prove the existence of the debt, his lien and delinquency and the debtor may regain possession by filing a bond.

The court noted that it was clear that issues could be limited in actions for possessions. The court said:

> ..... Petitioner's claim must accordingly be narrowed to one for a hearing on the issues in the possessory action — default, the existence of a lien and possession of the debtor — before the property is taken.
>
> *****

> [T]here is scant support in our cases for the proposition that there must be a final judicial determination of the seller's entitlement before the buyer may be even temporarily deprived of possession of the purchased goods. On the contrary, it seems apparent that the seller with his own interest in the disputed merchandise would need to establish in any event only the probability that his case will succeed to warrant the bonded sequestration of the property pending outcome of the suit. ***** The issue at this stage of the proceeding concerns possession pending trial and turns on the existence of the debt, the lien, and the delinquency. These are ordinarily uncomplicated matters that lend themselves to documentary proof; and we think it comports with due process to permit the initial seizure on sworn *ex parte* documents, followed by the early opportunity to put the creditor to his proof. The nature of the issues at stake minimizes the risk that the writ will be wrongfully issued by a judge. The potential damage award available, if there is a successful motion to dissolve the writ, as well as the creditor's own interest in avoiding interrupting the transaction, also contribute to minimizing this risk.

*North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U.S. 601, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975) has little bearing on the problem here. The court did recognize however, in distinguishing *Mitchell*, that it had upheld the Louisiana statute which merely required dissolution of the possessory writ upon motion of the buyer-debtor in the absence of proof by the creditor of the grounds on which the writ was issued.

The United States Supreme Court said in *Sniadach* that it does not sit as a super-legislative body. In *Fuentes*, the court said that the nature and form of the prior hearings are a subject for legislation, legitimately open to many potential variations, recognizing that there remained leeway to develop a form of hearing that will minimize unnecessary cost and delay, while preserving the fairness and effectiveness of the hearing to prevent seizures where the party seeking the writ has little probability of succeeding on the merits of the dispute.

The Arkansas General Assembly in enacting Act 144 of 1973 (Ark. Stat. Ann. § 34-2119 et seq) endeavored to give due regard to the guidelines of *Sniadach* and *Fuentes* as they applied to replevin actions. In view of the finding in *Mitchell* that the Louisiana statutory procedure for sequestration effected a constitutional accommodation of the interests of the parties, the Arkansas legislature at least met the minimum standards. Our statute only requires that the party seeking the order of delivery make a showing similar to that required by the Louisiana statute before the court in *Mitchell*. The section of Act 144 involved here reads:

> At any hearing held on an application for an order of delivery, the petitioner shall be required to present prima facie evidence that petitioner has right of immediate possession of such property. If the party against whom the order of delivery is sought should fail to appear in response to the notice, the petitioner shall be required to offer the same proof necessary to secure a default judgment. If the court decides that the order of delivery should issue, an order shall be entered accordingly.

The comparable portion of Art. 3506, Louisiana Code of Civil Procedure, a section of the Louisiana statute involved in *Mitchell* reads:

> The defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued. If the writ of attachment or of sequestration is dissolved, the action shall then proceed as if no writ had been issued.

The Arkansas statute clearly does not require that the circuit court, at this hearing, permit extensive evidentiary development of a defense such as usury alleged in conclusory fashion, without any statement of specific facts, when the alleged usury does not appear upon the face of the contract. Ark. Stat. Ann. § 34-2123 requires that the possessor file written objections. Appellant's written objection did not set out the particular facts and circumstances which rendered the contract usurious, as required of one pleading usury as an affirmative defense, where the usurious nature of the transaction is not disclosed upon its face. See *Leavitt* v. *Marathon Oil Co.*, 186 Ark. 1077, 57 S.W. 2d 814. It can hardly be expected that a plaintiff be prepared, at this type of hearing, to negate any and all evidence which might be asserted in support of such a conclusionary allegation, without any statement of underlying facts not alleged would, to say the least, be an exercise of the court's discretion to permit the pleading to be amended to conform with whatever evidence the defendant might offer.

The purpose of the writ of mandamus is not to establish a legal right, but to enforce one already established, so it is essential to the issuance of the writ that the petitioner show a clear and certain legal right to the relief sought and no other adequate remedy. *Naylor* v. *Goza, Judge*, 232 Ark. 515, 338 S.W. 2d 923; *State* v. *Baord of Directors of Ashdown*, 122 Ark. 337, 183 S.W. 747; *Snapp* v. *Coffman*, 145 Ark. 1, 223 S.W. 360; *Chavis* v. *Golden*, 226 Ark. 381, 290 S.W. 2d 637. Petitioner's right to the remedy sought is certainly not clear under the applicable statute. We cannot retrospectively control or correct that court's judicial actions by the extraordinary writ of mandamus, or compel it to reverse its ruling. See *Burks* v. *Mobley*, 245 Ark. 43, 430 S.W. 2d 859; *Watson* v. *Gattis*, 188 Ark. 376, 65 S.W. 2d 911; *Harrison* v. *Fulk*, 128 Ark. 229, 193 S.W. 532; *Maxey* v. *Coffin*, 94 Ark. 214, 124 S.W. 729; *McBride* v. *Hon*, 82 Ark. 483, 102 S.W. 389.

The question remains whether due process standards of the U.S. Constitution require us to interfere with the processes of the trial court during the pendency of this replevin action, on the grounds asserted by the petitioner. We think not.

In *Fuentes*, the court said that it had held that due process tolerates variances in the form of a hearing appropriate to the nature of the case, citing *Mullane* v. *Central Hanover B. & T. Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), and depending upon the importance of the interests involved and the nature of the subsequent proceedings, citing *Boddie* v. *Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1970). In *Mitchell*, the court said that due process guarantees no particular form of procedure, citing *National Labor Rel. Bd.* v. *Mackay Radio & T. Co.*, 304 U.S. 333, 58 S. Ct. 904, 82 L. Ed. 1381 (1938) and that its very nature negates any concept of inflexible procedures universally applicable to every imaginative situation, citing *Cafeteria Workers* v. *McElroy*, 367 U.S. 886, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 and *Stanley* v. *Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972).

Although it seems to us the Arkansas statute meets constitutional standards, we do not understand that facial unconstitutionality is asserted by petitioner. Petitioner is contending that the statute as applied by the circuit judge in her case violates due process and that the court had no discretion in the matter. We do not agree that the court had no discretion to limit the hearing as he did, either because of the statute or because of due process requirements. To say the least, both leave some latitude.

Since we do not find any basis for holding that the circuit court was wholly without discretion in the matter, mandamus will not lie. *Cantley* v. *Irby*, 186 Ark. 492, 54 S.W. 2d 286; *Jones* v. *Adkins*, 170 Ark. 298, 280 S.W. 2d 389; *Karoley* v. *Reed*, 233 Ark. 538, 345 S.W. 2d 626. The writ of mandamus is a discretionary writ. *Arkansas General Utilities Co.* v. *Smith*, 188 Ark. 413, 66 S.W. 2d 297; *Snapp* v. *Coffman*, 145 Ark. 1, 223 S.W. 360; *Patterson* v. *Collison*, 135 Ark. 105, 204 S.W. 753. This court has always been reluctant to issue the writ of mandamus to control, direct or correct the action of trial courts in interlocutory proceedings where the court has acted, rather than having refused to act. See *Arkanaas General Utilities Co.* v. *Smith*, supra; *Karoley* v. *Reed*, supra; *Cantley* v. *Irby*, supra; *Hopson* v. *Frierson*, 106 Ark. 292, 152 S.W. 1008; *Automatic Weighing Machine Co.* v. *Carter*, 95 Ark. 118, 128 S.W. 557;

*Batesville and Brinkley Railroad Co., Ex Parte*, 39 Ark. 82; *Harkey* v. *Wood*, 421 S.W. 2d 340; *Mance* v. *Mundt*, 199 Ark. 729, 135 S.W. 2d 848. Appellant has not shown any reason why we should do so in this case. The narrow issue before us is all we decide.

The writ is denied.