Donna KEY *v.* WORTHEN BANK & TRUST COMPANY, N.A.

76-112                                    543 S.W. 2d 496

Opinion delivered November 29, 1976
(In Banc)

*McHenry, Bryant & Polk,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

ELSIJANE T. ROY, Justice. Appellant Donna Key brought this action to void, as usurious, contracts entered with Worthen Bank & Trust Company, N.A. (Worthen) in conjunction with the issuance of BankAmericard and Master Charge bank cards. Appellant agreed to pay an annual membership fee of $12 in each credit plan and to be responsible for credit extended for purchases made on the basis of authorized use of the cards. She agreed to pay for such purchases currently or in installments on which interest would be charged.

Thereafter appellant charged certain items on her Master Charge account, for which she later paid Worthen although she refused to pay the annual membership fee. On her BankAmericard account she charged certain items amounting to $95.42 which she refused to pay. She also refused to pay the $12.00 membership fee added to the account, contending that the entire account was tainted with usury because of assessment of the membership fee. Worthen denied the membership fees were interest, but admitted that if the chancellor determined otherwise then interest on appellant's accounts exceeded the Arkansas maximum. In addition, Worthen counterclaimed for the balance of both accounts, including the membership fees.

The chancellor heard the case on the pleadings and a stipulation of facts. He found the membership fees were not imposed as a condition of a loan or extension of credit, but as a valid condition of membership in the bank card plan and not as a cloak for usury. The trial court also awarded Worthen judgment on its counterclaim for the balance on

each account. From that decree Mrs. Key has brought this appeal.

The application forms of both cards are almost identical, and the one signed by appellant for the BankAmericard credit plan reads as follows:

I have applied for membership in Worthen Bank & Trust Company's BankAmericard credit plan. If my application is approved, I agree to pay an annual fee of $12.00 for membership in the plan and for issuance of a bank card for use in conjunction with the plan. *I understand that the payment of the fee is required as a condition of membership in the plan, whether or not I use the bank card for the purpose of obtaining credit,* and I agree that the fee may be charged to my BankAmericard account. (Italics supplied.)

The following portions of the stipulation are pertinent to the issue:

1. * * * Credit applications are taken from applicants and a card or cards will be issued if the applicant meets certain predetermined credit standards established by Worthen. The decision of whether or not to issue a card or cards is made by Worthen. The applicant states the credit limit desired and, if the issuance of the card is approved, Worthen then determines whether the requested credit limit should be granted.

2. * * * The card-issuing bank has contracts with merchants under which the merchants agree to accept charges on bank cards in payment for goods or services. The card-issuing bank agrees to pay the merchants cash for the charge slips generated by the use of the card or cards issued by the bank. * * * By participating in a bank card plan, a merchant is relieved of the necessity of providing charge accounts for his customers and of the risk of accepting checks from customers. If the merchant complies with his contract governing acceptance of bank card charges, he receives cash for the charge slip and the card-issuing bank takes on the risk of collecting from the cardholder and carries the receivables generated by the

use of the card. This is the manner in which all card plans operate generally, and it is the manner in which Worthen operated its BankAmericard and Master Charge plans at all times relevant hereto.

The issuer ordinarily waits a period of time, something less than a month, before rendering its statement. If the cardholder pays within 25 days of the billing date then no finance charge is added, but if not, ten percent (10%) interest is added as a finance charge.

The parties also stipulated as to what D. E. Fortson, senior vice prssident of First Arkansas Bankstock Corporation, who : knowledgeable in the bank card industry, would testify if called as a witness. His testimony *inter alia* would be:

. . . ; that a bank card is proof of the holder's favorable credit rating and it is not unusual for a bank card to be used and accepted as a credit reference, particularly when a cardholder is in a city other than the city of his residence, and that merchants and innkeepers will cash checks for travelers who are holders of bank cards, relying on the generally known fact that such cards are issued to persons of financial responsibility and proven creditworthiness; that a bank card is a valuable convenience, because travelers can charge airline tickets, hotel bills, restaurant bills, and purchases from merchants on bank cards, obviating the necessity of carrying large amounts of cash on trips, and cardholders can pay the card-issuing bank for all charges at one time, without incurring a finance charge if paid within 25 days of billing, . . . ; that a membership fee is identical to the type of fee charged by companies issuing travel and entertainment cards, such as the American Express card; that the annual fee for an American Express card is $15.00.

\* \* \*

That it is Worthen's position that membership in a bank card plan is a valuable banking commodity because it affords a cardholder services and conveniences, entirely apart from and in addition to the extension of credit,

that would not otherwise be available to the member/cardholder; that member/cardholders would be willing to pay for these incidents of membership; that a membership fee properly may be charged on an annual basis; and that a fee for membership may be made even though each member may not avail himself of all available features of membership.

Appellant if called as a witness for rebuttal would testify:

. . . that she used her bank cards for the extension of credit only, and not for any of the other purposes described in the stipulated testimony of Mr. Fortson.

Appellant contends whether termed a "membership fee," a "service charge," or whatever terminology is used, the annual fees charged by BankAmericard and Master Charge constitute "interest" and the transactions in question are violative of Article 19, § 13 of the Arkansas Constitution, which prohibits a greater rate of interest than 10% per annum.

Appellant also cites as authority for her position Arkansas cases which hold as usurious laws having "hidden items" and/or "multiple transactions" designed to allow the lender to charge more than 10%. We agree with the legal principles enunciated in these cases but do not find them to be appropos here since the membership fees are not hidden items and do not fall within the "multiple transactions" prohibitions.

The burden of proof is on appellant to prove that the contracts are usurious. An intention to charge a usurious rate of interest will never be presumed, imputed or inferred where the opposite result can fairly and reasonably be reached. *Brown* v. *Central Arkansas Production Credit Assn.*, 256 Ark. 804, 510 S.W. 2d 571 (1974); *Davidson* v. *Commercial Credit Equipment Corp.*, 255 Ark. 127, 499 S.W. 2d 68 (1973).

Here the membership fee was not imposed in connection with receiving a loan from Worthen or with any specific extension of credit. Mrs. Key came to the bank voluntarily seeking membership in specific bank plans. Appellant's applications for the cards stated she understood the membership

fee was required whether or not she used "the bank card for the purpose of obtaining credit."

Mrs. Key was not a necessitous borrower who as a prerequisite to a loan was forced to buy something which she did not want. On the contrary, the bank card is a convenience to the cardholder, and the extension of credit is only one of several features of the card.

It serves as a credit reference similar to a letter of credit enabling the holder to cash checks or otherwise trade upon the recognition of credit worthiness which the card affords. Since merchandise and services can be secured without the necessity of writing checks it is very much like a check writing service. However, when the cardholder finds it necessary to cash checks while out of town the card is particularly helpful because it may solve credit worthiness and identification problems which often arise. It also obviates the necessity of carrying large amounts of cash with all the attendant risks. The value of the security feature of an instrument permitting only the bearer thereof to use it to obtain cash, goods or services has long been recognized by the issuance of traveler's checks, for which a charge is validly made.

We have previously held that contracts or fees collateral to the lending or borrowing of money, if in themselves lawful and made in good faith, do not infect the "borrowing transaction" with usury, although their effect may be to increase the sum payable from the borrower to the lender. See *Leavitt v. Marathon Oil Co.*, 186 Ark. 1077, 57 S.W. 2d 814 (1933); *Commercial Credit Plan v. Chandler*, 218 Ark. 966, 239 S.W. 2d 1009 (1951).

We find the agreement here was openly made in good faith and the membership fee is collateral to any interest imposed in connection with a loan or the extension of credit. Our decision is not to be interpreted as withdrawal by this Court from its long established position that we will not permit evasion of the constitutional prohibition against interest charges in excess of 10%. See *Winston v. Personal Finance Company of Pine Bluff, Inc.*, 220 Ark. 580, 249 S.W. 2d 315 (1952), where we held the loan usurious and stated: " . . . here the 'service charge' is a mere shell to conceal the kernel of usury."

However, in the case at bar we agree with the chancellor that the membership fee is not a cloak for usury, but that it is valid consideration paid for the many services available to members in the bank card plans. It is immaterial that Mrs. Key chose not to use the privileges attendant to ownership of the bank cards as these privileges were available to her and furnished valuable consideration for the membership cards.

Affirmed.