The Honorable Jodie Mahony State Representative 406 Armstrong Building El Dorado, AR 71730
Dear Representative Mahony:
This is in response to your request for an opinion regarding a proposed delayed tuition payment plan. You state that the South Arkansas Community College wishes to establish procedures whereby a student can delay payment of his or her tuition, but that the interest that could be charged would not pay for all of the institutional costs involved in setting up and generating a loan program, nor would it be sufficient incentive to encourage students to pay at the beginning of a semester. You note that there are legitimate costs in setting up a delayed payment plan, including staff time to keep up with the paperwork and follow up on students who pay late and the inevitable losses when collection is delayed, as well as the loss of interest on tuition deposits when tuition is not collected in full at the beginning of a semester.
Your specific question in this regard is whether the college can charge a flat service charge to establish a delayed tuition payment plan that will help the college recoup the cost of providing such a plan, even if the service charge exceeds the amount the institution would be allowed to collect under the usury provisions of the Arkansas Constitution.
It is my opinion that the "service charge" would in all likelihood be considered interest on the contract or agreement for delayed payment, and would thus make the contract usurious if the maximum lawful rate of interest is in fact exceeded.[1]
The service charge must be measured in light of the constitutional provision concerning usury (art. 19, § 13) and cases construing it. The Arkansas Supreme Court has stated that it does not matter whether charges added under a contract are called a "penalty," "late charge," "service charge," or some other name. Bunn Lumber Co. v. Weyerhaeuser Co., 268 Ark. 445,450, 598 S.W.2d 54 (1980). The court will, instead, examine the facts of each case to determine whether usury was actually charged or contracted for. Id. With regard to "service charges," case law clearly establishes the principle that the lender cannot impose upon the borrower charges that in fact constitute the lender's overhead expenses or costs of doing business. See Henslee v. Madison Guaranty Sav. Loan Ass'n,297 Ark. 183, 189, 760 S.W.2d 842 (1989), citing Ark. Sav. Loan Ass'n v. Mack Trucks of Ark., 263 Ark. 264, 566 S.W.2d 128
(1978). See also Miller v. Test, Adm'x, 243 Ark. 694,421 S.W.2d 345 (1967); Sosebee v. Boswell, 242 Ark. 396,414 S.W.2d 380 (1967); Strickler v. State Auto Finance Co., 220 Ark. 565,249 S.W.2d 307 (1952); and Winston v. Personal Finance Co.,220 Ark. 580, 249 S.W.2d 315 (1952). Mack Trucks, supra, involved a "service charge" defined by the lender as a charge for the lender binding itself unconditionally to make construction loans and advances. 263 Ark. at 266. The court held that regardless of what it was called, the commitment fee constituted a discount — the taking of interest in advance. Id. at 268. It amounted to interest because it was nothing more than the lender's overhead or cost of doing business, which the court noted could not be passed on to the borrower (citing Sosebee v. Boswell, supra). Because there was no other basis for the charge, the fee was an unjustified service charge which, the court held, should be included as interest under the note. Id.
The court in Sosebee, supra, identified this underlying principle as follows:
[T]he moneylender cannot impose upon the borrower charges that in fact constitute the lender's overhead expenses or costs of doing business. Such outlays are fundamentally for the lender's benefit and cannot, by whatever device, be shouldered off upon the borrower. On this point our recent decisions are unequivocal. [Citing Strickler, supra and Winston, supra.]
The court has recognized that not every charge made to a borrower which benefits the lender will render a transaction usurious.Lockhart v. GMAC, 252 Ark. 878, 880, 481 S.W.2d 350 (1972). InKey v. Worthen Bank Trust Co., 260 Ark. 725, 543 S.W.2d 496
(1976), the court noted its previous holding that ". . . contracts or fees collateral to the lending or borrowing of money, if themselves lawful and made in good faith, do not infect the `borrowing transaction' with usury, although their effect may be to increase the sum payable from the borrower to the lender."260 Ark. at 730 (citations omitted). Key involved a bank card membership fee. The court upheld the charge, stating that it was not imposed in connection with receiving a loan or with any specific extension of credit. Id. It was not, according to the court, a "cloak for usury," but was instead ". . . valid consideration paid for the many services available to members in the bank card plans." Id. at 731.
The court in Lockhart, supra, stated the following with regard to so-called "collateral agreements:"
Not every charge made to the borrower which benefits the lender will render a transaction usurious . . . if the charge is reasonable, is made in good faith and is reimbursement for a payment to a third party for something appropriate to establishing or protecting of the lender's security.
252 Ark. at 880. The court noted the propriety of such charges as property inspection fees, expenses of an abstract of title, title examination fees, insurance premiums paid a third party, recording fees, expense of obtaining release of a prior lien, and title insurance premiums. Id. (citations omitted.)
The proposed service charge for establishing a delayed tuition payment plan does not appear to fall within the charges that have been authorized by the court. Although there are no cases directly on point, I believe this type of delayed payment plan would most likely be governed by the line of cases beginning withStrickler, supra, which have equated "service charges" with interest where the charges constitute the lender's overhead expenses or costs of doing business. The college will, in essence, be extending credit to the student, and the foregoing cases compel me to conclude that the service charge will fall within the constitutional prohibition if the maximum legal rate of interest is exceeded.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Article 19, Section 13 of the Arkansas Constitution states, under subsection (a)(i), that "[t]he maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate from the time of the contract." This provision is derived from Amendment 60 to the Arkansas Constitution which was approved in 1982.