588

## Gary E. JOHNSON et al *v.* FEDERAL NATIONAL MORTGAGE ASSOCIATION et al

80-153                                                    609 S.W. 2d 60
Supreme Court of Arkansas
Opinion delivered December 22, 1980

Appellants, *pro se.*

*Spears, Sloan & Johnson* and *Wright, Lindsey & Jennings*, for appellees.

DARRELL HICKMAN, Justice. This is an appeal from the Chancery Court of Craighead County and involves the issue of usury. The case presents no unusual problems because a routine FHA loan is involved. The chancellor found that all of the loan closing charges were legitimate and that the interest charged did not exceed 10%. We agree with this judgment and affirm the decree.

Gary Johnson purchased a house in 1974 from George and Marie Baldwin. Originally the parties agreed that the sale price would be $43,500.00. For some reason, apparently because Johnson could not get a conventional loan, a new

offer and acceptance was signed reflecting a sales price of $40,000.00. It was agreed that the sale would be secured by an FHA mortgage. Boyle Mortgage Company made a $35,-500.00 loan to Johnson, and the Baldwins, who were the sellers, paid a 7% discount to Boyle Mortgage Company. Boyle later sold the mortgage to Federal National Mortgage Association, the appellee. Johnson's main argument is that the 7% discount, which amounted to over $2,000.00, made his 8-¾% loan usurious. In addition, he alleges that virtually all the charges made by Boyle should have been considered interest, increasing the already usurious interest charge.

In no way is this situation similar to that in *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S.W. 2d 973 (1952), where we issued a caveat regarding discounts. In this case the sellers did not increase the sales price to accommodate the discount points; it was purely an arms-length transaction.

Furthermore, the *sellers* paid the discount points. The additional amount was, therefore, not interest.

There was no evidence at all that any of the other charges made by Boyle Mortgage Company, which the chancellor found legitimate, could be considered a cloak for usury. The fees included charges for photographs, appraisals, title insurance, credit reports, abstract and attorney fees. In every instance the evidence was that the money charged for these services was paid to a third party and was legitimate.

Boyle Mortgage Company did collect interest that was due on the note before the first payment would be due, which is a standard practice. Also, Boyle Mortgage Company did collect a one percent origination fee. The court considered both charges interest but this did not affect the legality of the loan. The burden of proof is upon the one asserting the defense of usury and he must prove it by clear and convincing evidence. *Moore, d/b/a Pulpwood Suppliers, Inc.* v. *Owens*, 268 Ark. 324, 597 S.W. 2d 65 (1980). Not only did Johnson fail to prove usury, but the evidence is overwhelmingly to the contrary.

Affirmed.

GEORGE ROSE SMITH, J., concurring.

PURTLE, J., not participating.

GEORGE ROSE SMITH, JUSTICE, concurring. I agree that the "discount points," amounting to $2,130, did not constitute "interest," because that amount was paid by the sellers to the lender at a time when the purchaser as yet owed nothing. The discount points were therefore a deduction from principal, like the 1% origination fee. If, however, the majority imply that the discount points are not even to be considered in testing the transaction for usury, then I doubt if the lender itself seriously makes that contention.

What happened is essentially undisputed. The buyers and sellers first signed an offer-and-acceptance form reciting a purchase of $43,500, with a provision that the sellers agreed to pay a 7% discount point on the loan value of the land. It turned out that the loan value was not sufficient to enable the buyers to obtain the necessary loan with the discount point and with the agreed down payment of $4,500. Consequently, 78 days later the parties signed an identical substituted offer and acceptance in which the purchase price was reduced to $40,000, with the same 7% discount point on the loan value and the same $4,500 down payment. In consummating the loan the lender provided the buyers with a Truth-In-Lending disclosure statement reciting the amount of the loan and the prepaid finance charges as follows:

| | | |
|---|---|---|
| Amount of Loan | | $35,500.00 |
| Prepaid Finance Charge | | |
| Loan fee, discount of similar charges | 2,130.00 | |
| 1% origination fee | 355.00 | |
| Photos and schedule | 8.50 | |
| Interest adjustment | 129.45 | |
| Total prepaid finance charge | | 2,622.95 |
| Amount financed | | 32,877.05 |

Thus the lender admitted in the disclosure statement that the discount point of $2,130 was a prepaid finance charge to be deducted from the amount of the loan. No other conclusion is really possible, because all this was done by

prearrangement. The net result is exactly the same as if on the closing date the buyers, the sellers, and the lender had all sat down together to close the transaction. The lender would then have advanced the net loan, including the $2,130 discount, to the buyers; the buyers would have handed the money to the sellers; and the sellers would have paid the discount of $2,130 back to the lender. The testimony does not show that the $2,130 was actually passed from hand to hand, but the result is the same either way, because the discount was a paper transaction understood and agreed to by all concerned.

Even so, the loan was not usurious. The payments upon a loan of $32,877.05, payable at 10% interest in 360 monthly installments, would be $288.48 a month. Lake's Monthly Installment and Interest Tables, p. 448 (6th ed., 1970). Here the contract payments, as set forth in the disclosure statement, in the promissory note to the lender, and in the mortgage, were only $279.39 a month. Hence the interest rate was less than 10% per annum and not usurious under Arkansas law.