### FEDERAL LAND BANK OF ST. LOUIS, Plaintiff,

v.

John WILSON and Georgia Wilson; the First State Bank of Newport, formerly the First National Bank of Newport, Arkansas; United States Department of Agriculture, by and through Farmers Home Administration and Bank of Newark, Defendants.

No. B–C–80–11.

United States District Court, E. D. Arkansas, N. D.

Feb. 18, 1982.

Donald P. Raney, Lightle, Beebe & Raney, Searcy, Ark., for plaintiff.

David M. Clark, Hively, Ketz & Bell, Batesville, Ark., and David Hodges, Newport, Ark., for Georgia Wilson.

Larry Hartsfield, Newport, Ark., for First State Bank of Newport.

Sherry P. Bartley, Asst. U. S. Atty., Little Rock, Ark., for U. S. Dept. of Agriculture.

Jerry C. Post, Murphy, Blair, Post & Stroud, Batesville, Ark., for Bank of Newark.

## MEMORANDUM OPINION

HOWARD, District Judge.

This foreclosure action was removed from the Independence County, Arkansas, Chancery Court to this Court pursuant to the request of the United States of America, acting through the Farmers Home Administration (FmHA). Other parties in this rather involved and complex proceeding are: The Federal Land Bank of St. Louis (Federal), First State Bank of Newport (State Bank), Bank of Newark (Newark), John Wilson and Georgia Wilson.[1]

---

1. John and Georgia Wilson, the payors and mortgagors on the notes and mortgages involved, were formerly husband and wife. This

## FACTUAL BACKGROUND

### CLAIM OF FEDERAL:

On January 14, 1974, John and Georgia Wilson executed a promissory note to Federal in the sum of $20,000.00 with interest at the rate of 7½% per annum. Under the terms of the note, Federal possessed the option to invoke a variable rate of interest if economic conditions warranted the action. Contemporaneously, the Wilsons executed a mortgage to Federal conveying the following property in Independence County to secure the promissory note:

Part of the West Half of Lot 5 of the Northeast Fractional Quarter of Section 5, Township 12 North, Range 4 West, of the 5th P.M., described as follows:

Commencing at the Southwest Corner of said Lot 5, thence East 264 feet to the point of beginning, thence North 330 feet, thence East 198 feet, thence South 330 feet, thence West 198 feet to the point of beginning.

On February 20, 1980, Federal filed a foreclosure action against the Wilsons in the Chancery Court of Independence County alleging that the Wilsons were in default in their payments on the note; that Federal had elected to accelerate the indebtedness and declare the entire principal indebtedness due, and praying for a judgment against the Wilsons for $21,828.10, interest due and reasonable attorney's fees.

Federal made State Bank, FmHA and Newark party-defendants, asserting that these defendants were necessary parties since each claimed a security interest in the property in question.

### CLAIM OF NEWARK:

On March 10, 1980, Newark filed its answer and "cross-complaint" alleging that on June 19, 1978, John Wilson executed and delivered to Newark a promissory note for $10,500.00; and that on August 22, 1978, John and Georgia Wilson executed to Newark a deed of trust as security for the note to the extent of $7,556.75.

Newark alleged that John Wilson had failed to make payments as promised and requested a judgment *in rem* against the Wilsons for $7,556.75, interest at the rate of 10% per annum from August 22, 1978, and reasonable attorney's fees.

### CLAIM OF FmHA:

John and Georgia Wilson executed the following promissory notes to FmHA: a note dated February 20, 1976, for $32,500.00, with interest at the rate of 8½% with a maturity date of February 20, 1977; a note dated February 16, 1977, which represented a reamortization of a $40,000.00 note dated January 9, 1974, for $16,174.64, bearing interest at the rate of 8% and with a maturity date of January 9, 1981; and a note dated February 17, 1977, for $48,800.00 bearing interest at the rate of 5% and with a maturity date of February 16, 1983. The February 20, 1976, and February 16, 1977, notes were secured by junior liens on the real estate involved in this action and a security interest in chattels and farm implements. The February 17, 1977, note for $48,800.00 was secured only by a security agreement involving the farm implements.[2]

On October 24, 1979, FmHA filed a creditor's application for disclaimer of certain assets in John Wilson's bankruptcy proceedings. FmHA sought the abandonment of any interest of the bankruptcy trustee in ten items of farm equipment and 606 bushels of soybeans. On January 3, 1980, the bankruptcy court entered its order authorizing abandonment of the farm equipment, but denied the request for abandonment of the soybeans. The abandoned property was sold on February 12, 1980. Pursuant to the instructions of the Independence County FmHA supervisor, the finance office of FmHA applied the net proceeds from this sale to the Wilsons' notes in the following manner: $19,573.37 as principal and $5,175.82 as interest to the February 20, 1976, note; and $12,855.57 as principal and

marriage was terminated by an absolute divorce decree of the Independence County Chancery Court on October 26, 1979.

2. John Wilson instituted a voluntary Chapter VII Bankruptcy proceeding on June 4, 1979. Georgia Wilson was not a party to this action.

$5,181.58 as interest to the February 16, 1977, note. Both notes were secured by junior liens on the real estate under consideration.

Realizing that the aforementioned allocation of the proceeds from the chattel sale was not in its best interest, FmHA, on January 23, 1981, reallocated the proceeds as follows: $19,573.37 as principal and $5,175.82 as interest to the note of February 20, 1976, and $12,855.57 as principal and $5,181.55 as interest to the note of February 17, 1977. The effect of the reallocation was to increase the unpaid balance on the reamortized note of February 16, 1977, from an unpaid balance of $3,323.49 as principal and interest at 8% per annum to an unpaid balance of $16,174.64 as principal and $6,519.03 as interest; and reduce the unpaid balance on the $48,800.00 note of February 17, 1977, from $26,354.67 as principal and $836.12 as interest to an unpaid balance of $9,130.73 as principal and $310.70 as interest.

FmHA does not seek any relief for the February 17, 1977, indebtedness, in this foreclosure proceeding, since this note is not secured by the real estate involved.[3]

## CLAIM OF STATE BANK:

On January 8, 1975, the Wilsons executed a promissory note to Phillip D. Hout, as Trustee of W. F. Hurley, Inc., for $7,180.57, payable as follows: $1,000.00 on March 15, 1975, $1,500.00 on December 31, 1975, $1,500.00 on December 31, 1977, and $1,608.50 on December 31, 1978, with interest at the rate of 10% per annum. On the same date, the Wilsons executed a deed of trust to Phillip D. Hout, as Trustee of W. F. Hurley, Inc., offering the real estate involved as security for the note.

On May 16, 1975, the promissory note and deed of trust were assigned to State Bank.

State Bank prays judgment jointly and severally against John Wilson, *in rem*, and Georgia Wilson, *in personam*, for $5,620.50, together with interest. State Bank concedes that it has a second lien on the real estate in question.

## CONTENTION OF GEORGIA WILSON:

Georgia Wilson contends, first, that she was awarded possession of the real property in question under the divorce decree terminating the marital relationship between the Wilsons; and that the foreclosure action by the respective mortgagees, Federal, Newark and FmHA, is subordinate to her claim and right to possession of the realty.

Georgia Wilson also asserts that the promissory note of January 8, 1975, held by State Bank is void for failure of consideration and is usurious on its face.[4]

Finally, Georgia Wilson asserts usury as an affirmative defense to the claims of Newark and FmHA.

## DISCUSSION OF THE ISSUES

### I.

## USURY:

The thrust of Georgia Wilson's defense of usury to the claim of Federal may be summarized: Federal "must forfeit its note and security for violating Article 19, Section 13 of the Arkansas Constitution.[5] The issue is whether Congress intended to preempt the field of state usury laws when it enacted the Farm Credit Act of 1971."[6] *See* Farm

---

3. The real property involved in this action was abandoned pursuant to an order of the bankruptcy court dated January 9, 1980, after the bankruptcy court found:

> [T]here is no reasonable basis to believe there is an equity above liens and that said property . . . is abandoned and disclaimed as an asset in this case.

4. Newark, as an interested party, also challenges the validity of the promissory note of January 8, 1975, and State Bank's entitlement to any relief on the grounds that the purported antecedent obligation—a default judgment en-

tered against John Wilson—was void *ab initio* and accordingly, there is no consideration for the note and claim of State Bank.

5. Section 13 provides:

> All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest. . . .

6. While Georgia Wilson concedes that the pivotal issue here is whether Congress has preempted the field of state usury laws, she has listed six items, in her post-trial brief, that

Credit Act of 1971, Pub.L. 92–181; 12 U.S.C. § 2015.

It is well settled that the Farm Credit Act (Act) governs the terms and conditions of interest rates imposed in credit transactions involving Federal Land Banks. State usury provisions are inapplicable.

The Act, in relevant part, provides:

Loans made by a Federal land bank shall bear interest at a rate or rates, and on such terms and conditions, as may be determined by the board of directors of the bank from time to time, with the approval of the Farm Credit Administration. In setting rates and charges, it shall be the objective to provide the types of credit needed by eligible borrowers at the lowest reasonable costs on a sound business basis taking into account the cost of money to the bank, necessary reserve and expenses of the banks and Federal land bank associations, and providing services to stockholders and members. *The loan documents may provide for the interest rate or rates to vary from time to time during the repayment period of the loan, in accordance with the rate or rates currently being charged by the bank.* (Emphasis added)

In *Beatrice Production Credit Association v. Vieselmeyer*, 376 F.Supp. 1391 (D.Neb. 1973), the court made the following relevant comment:

As a general rule, there is no question that, when Congress legislates in an area in which it has constitutional authority, the laws of the states in the same field, to the extent that they are inconsistent with the federal law, must yield . . . . (Citations omitted)

. . . . .

Congress did not intend state interest limitations to control interest rates charged by Production Credit Associations. . . . Its failure . . . [expressly allowing state usury laws to apply] suggests that interest rates were to be determined in the manner set forth in the [Act] without reference to state interest limitations. . . .

The promissory note executed by Georgia and John Wilson to Federal provides:

FOR VALUE RECEIVED, the undersigned . . . promises to pay to THE FEDERAL LAND BANK OF ST. LOUIS . . ., the principal sum of $20,000.00 with interest . . . at the rate of 7½ per centum per annum or at said bank's option at such other rate applicable to this class of loan as may be subsequently adopted by said bank all in accordance with the Farm Credit Act of 1971. . . .

In short, the Farm Credit Act, which is an expression of Congress' attempt to cope with the socio-economic problems confronting farmers and farmers' organizations nationwide, may not be frustrated by the various and sundry state interest laws where, as here, Congress has made it clear that the Act is to be administered uniformly and nationwide. Accordingly, Georgia Wilson's defense of usury involving the transaction with Federal is rejected.

---

purportedly render the transaction violative of Arkansas' usury provision:

1. Federal's capital stock subscription, consisting of 200 shares and valued at $1,000, withheld and not applied to the principal upon declaration of default deprives Georgia Wilson of her property and thus causes the rate to exceed 10%.
2. There are no guidelines on when, if at all, the stock will be credited against the principal.
3. The percentage for closing cost [in the sum of $200.00] was not earned and thereby becomes interest.
4. The use of the floating rate of interest is violative of the usury limit unless excused by federal legislation.

5. Federal Land Bank charged the borrower in advance of when funds were actually expended, apparently in an effort to take advantage of the "float".
6. Other factual matters were developed in the trial which make the amount capable of being charged or actually charged in excess of 10% and thereby void.

The posture taken by the Court on Georgia Wilson's usury claim eliminates the necessity of determining whether either one or all of the above items generated an interest charge in excess of Arkansas' maximum interest rate of ten per cent per annum.

## II.

### USURY AS TO CLAIMS OF NEWARK AND FmHA:

 Under Arkansas law, a litigant pleading usury as an affirmative defense has the duty to allege the essential facts and circumstances which render the transaction usurious. *Girley v. Wood*, 258 Ark. 408, 525 S.W.2d 454 (1975).[7] Moreover, the party asserting the defense of usury has the burden of proving by clear and convincing evidence that the transaction is usurious, for usury will not be presumed, imputed or inferred if an opposite result can be fairly and reasonably reached. *Johnson v. Federal National Mortgage Association*, 271 Ark. 588, 609 S.W.2d 60 (1980); *Fausett and Company, Inc., v. G & P Real Estate, Inc.*, 269 Ark. 481, 602 S.W.2d 669 (1980); *Davidson v. Commercial Credit Equipment Corporation*, 255 Ark. 127, 499 S.W.2d 68 (1973). In addition, there must be an intent on the part of the creditor to impose an interest charge in excess of the permissible ten per cent per annum in order to render the transaction usurious.

Georgia Wilson's answer, in raising usury as an affirmative defense, alleges only:

(2) Georgia Wilson contends all of the transactions violate the usury provision of the Arkansas Constitution thereby rendering such transaction void.

 It is plain that this conclusory allegation falls far short of articulating "essential facts and circumstances" required under *Girley v. Wood, supra.* Moreover, the Court, after reviewing the relevant documents, notes and deeds of trust, is not persuaded that a *prima facie* case of usury is established facially and, consequently, the burden of proof did not shift requiring Georgia Wilson's creditors to demonstrate that the transactions are not usurious.

Finally, Georgia Wilson has failed completely to offer any clear and convincing evidence to support her claim of usury against any claimant in this action. Ac-

cordingly, the Court finds and concludes that the defense of usury is without merit.

## III.

### WILSONS' NOTE OF JANUARY 8, 1975:

The Bank of Newark contests the validity of the January 8, 1975, promissory note executed by the Wilsons to W. F. Hurley for $7,180.57, and later assigned to State Bank. Since State Bank has abandoned its claim of being a holder in due course, the defense of want or failure of consideration remains.

Ark.Stat.Ann. § 85–3–408 (Add.1961) provides in relevant part:

Want or failure of consideration is a defense as against any person not having the rights of a holder in due course, except, that no consideration is necessary for an instrument or obligation given in payment of . . . an antecedent obligation of any kind.

John Wilson testified that the note was executed to remove a lien created in 1974 when a 1972 judgment obtained against him in Jackson County Circuit Court was filed in Independence County after his family moved there. That judgment resulted from a default judgment when Wilson failed to appear after his fourteen-year-old daughter received service at their home in Pulaski County. The judgment was for $1,500.00 in rent owed from 1962 through 1964 on some equipment which Wilson stated he never rented. Wilson testified that because of the lien, he was unable to obtain a loan for his farming operation and so made the promissory note and deed of trust with Georgia Wilson to release the lien and get the money he needed. Wilson later paid $1,000.00 on the note in June, 1975, $1,900.00 on the note in January, 1978, and $187.95 on the note in May, 1978.

State Bank contends that the evidence shows that the note in question was given as payment of a pre-existing open account obligation by John Wilson, and thus, fits

7. In *Bunn v. Weyerhaeuser*, 268 Ark. 445, 598 S.W.2d 54 (1980), the court held that when an instrument is usurious on its face, the holder has the burden of proving it to be otherwise. *See also Knox v. Goodyear Stores, Inc.*, 252 Ark. 530, 479 S.W.2d 875 (1972).

into the exception that no consideration was required.

Newark contests that there was such an obligation at the time the note was made. It argues that the judgment taken by Hurley was void since the service was defective, any action for the alleged debt would have been barred by the statute of limitations, and since the original claim was $1,500.00 there was at least a partial failure of consideration in the execution of a $7,180.57 promissory note.

■ There is no question that the Jackson County judgment is void for lack of proper service. Ark.Stat.Ann. § 27–614 (Repl.1979). Thus, that judgment is a nullity and void *ab initio. Edmonson v. Farris,* 263 Ark. 505, 565 S.W.2d 617 (1978). Such a judgment is entitled to no authority or respect and can be impeached at any time, in any proceeding by anyone such as Newark with whose rights and interests it conflicts. 49 C.J.S. Judgments § 401, p. 794.

While State Bank argues that the note was payment for a separate obligation, underlying and pre-existing to that judgment, the Court credits John Wilson's testimony that such an obligation did not exist. Furthermore, the testimony shows that the suit brought in Jackson County was filed in 1972, at least eight years after the alleged obligation was incurred. Wilson, thus, would have an absolute defense of either the three year statute of limitations (Ark. Stat.Ann. § 37–206) or the five year statute of limitations (Ark.Stat.Ann. § 37–209).

■ Since State Bank has failed to demonstrate an antecedent obligation for which the 1975 promissory note and deed of trust were given by the Wilsons, the Court finds that the transaction does not fit within the exception of the defense of want or failure of consideration.[8]

---

**8.** The testimony of John Wilson, which the Court finds is clear and convincing, supports a finding that the note of January 8, 1975, is usurious inasmuch as the difference between $1,500.00, the amount of the purported antecedent obligation, and the amount of the note, $7,180.57, exceeds the permissible interest

## IV.

## REAPPROPRIATION OF PROCEEDS FROM CHATTEL SALE:

The question here is whether FmHA's inadvertent action in crediting two notes secured by junior liens against the real property involved with proceeds from the chattel sale precludes reallocation of these proceeds without consent of the mortgagors.

Section III G of the security agreement involving the chattel and crops securing the $48,800.00 note of the Wilsons provides in material part:

> Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, *in any order Secured Party determines.*[9] (Emphasis added)

In *Lyon v. Bass,* 76 Ark. 534, 89 S.W. 849 (1905), the Arkansas Supreme Court in observing that there is a presumption that proceeds from a foreclosure sale will be applied to that indebtedness secured by the property sold stated:

> When property is mortgaged to secure a debt, and afterwards this property is sold, and the proceeds turned over to the mortgagee, the natural presumption is that both parties intend that the payment shall be applied on the mortgage debt, and the mortgagee has the right to apply the payment in that way, even though the mortgage debt be not due.

The prevailing view appears to be that when a creditor credits an account, the action is not a conclusive allocation in the absence of notice to the debtor. However, when a creditor appropriates a payment in a particular way and the debtor has been put on notice of the action, the creditor is bound by his act and cannot reallocate the credit without consent of the debtor. *In re Automatic Equipment Mfg. Co.,* 103

---

charge under Arkansas law to the extent of $4,000.00.

**9.** This security agreement also served as security for the two notes secured by junior liens on the real estate.

F.Supp. 427; *In re Stacy, Wolf Hat Co.*, 99 F.2d 793 (2nd Cir.); *People v. Grant*, 139 Mich. 26, 102 N.W. 226; 70 C.J.S. Payment § 65 p. 270.

■ The Court is persuaded, and accordingly finds, that the finance office of FmHA erroneously applied the proceeds from the chattel sale to two notes secured by real estate mortgages and the chattel security agreement instead of the $48,800.00 note secured only by the chattel; that such application was to the disadvantage of FmHA; that neither the Wilsons nor Newark had notice of the misapplication and, consequently, were not prejudiced in any way by the reallocation; that the initial allocation was not irrevocable since FmHA possessed the contractual right to select the order of application of the chattel proceeds. Moreover, there is no evidence of a detrimental reliance upon FmHA's mistake in the initial appropriation by anyone involved in this action. Accordingly, the reallocation made by FmHA is sustained and the argument of Newark and Georgia Wilson is rejected.[10]

## V.

### GEORGIA WILSON'S CLAIM TO THE RESIDENCE AND ONE–HALF OF THE SOYBEANS:

The absolute divorce decree terminating the marital relation between John and Georgia Wilson provides:

(7) The Court finds that the parties owned a residence and an adjoining tract on which a barn is located and the title in the property shall remain as tenants by the entirety. Defendant is required and ordered to make the house payments on the home and keep the payments current. Each of the parties is to have the vehicle presently in the parties' possession. Plaintiff is to have the household goods as set forth in a previous property settlement agreement which is approved and confirmed by the Court as filed herein.

Defendant is to pay the taxes and insurance on the house. Plaintiff is entitled to possession of the home and adjoining property so long as she remains unmarried and maintains this house as her principal residence. *In the event the plaintiff remarries, or ceases maintaining the house as her personal residence, then the house shall be sold and the proceeds divided after payment of mortgages against the property and the expenses of the sale have been retired.* (Emphasis added)

(8) The Court finds the defendant shall be entitled to the proceeds of any settlement or recovery on pending claims or lawsuits concerning the farming operation.

Georgia Wilson contends that she is entitled to possession of the real estate involved to the exclusion of the claims of all mortgagees. This posture is predicated upon the possessory rights afforded her in the state court's divorce decree to the personal residence of the Wilsons'.

■ The Court deems it sufficient to state that it is plain the Independence County Chancery Court recognized the validity and priority of the various mortgages existing on the Wilsons' residence in awarding possession to Georgia Wilson. Moreover, the mortgagees were not parties to the divorce proceeding. The validity of the encumbrances on the realty was never made an issue in the divorce proceeding. Thus, the argument of Georgia Wilson is clearly without merit.

Finally, Georgia Wilson argues that Newark took possession of funds "from soybeans stored . . . in the name of John Wilson [and that she has been deprived of dower rights and individual property interest in the beans]" and, consequently, she should have judgment against Newark for her interest in the soybeans.

■ The state court's divorce decree awarded John Wilson all proceeds from the

---

**10.** Neither Newark, John Wilson nor Georgia Wilson requested FmHA to appropriate the proceeds in any particular manner.

"farming operation." It is clear the state court, in making a division of the Wilsons' property, intended to award John Wilson all assets from the farming venture free and clear of any claims of Georgia Wilson. Accordingly, the Court holds that the requested relief of Georgia Wilson is without merit.

## VI.

RELIEF GRANTED:

1. That John Wilson and Georgia Wilson are justly indebted to Federal in the amount of $24,860.64 as of January 26, 1981, in accordance with the terms and provisions of a promissory note dated January 14, 1974, and a mortgage dated the same date with a daily rate of interest at $5.98030, in which the Wilsons have defaulted in their payments; and, consequently, Federal is entitled to judgment *in personam* against Georgia Wilson and entitled to a judgment *in rem* against John Wilson, as to his interest in the real property which is the subject matter of this cause of action.

That Federal advanced, during 1979 and 1980, $758.00 for insurance to protect the real estate herein, $315.92 for payment of 1978 and 1979 real estate taxes, $33.00 for abstracting expenses, for which Federal is entitled to interest from date of the advancement to date of judgment and after entry of judgment at the legal rate until paid.

For all of such sums, Federal has priority over all other existing mortgages and deeds of trust.

2. That John Wilson and Georgia Wilson are justly indebted to FmHA in the sum of $16,174.64 principal, plus interest of $6,519.03 accrued through March 26, 1981, with interest accruing thereafter at the daily rate of $3.5451 on its reamortized note of February 16, 1977; and that FmHA is entitled to judgment *in rem* against Georgia Wilson and John Wilson as to their interest in the real property which is the subject matter of this action. FmHA has a second lien which is inferior only to the claim of Federal, but superior to all right, claim, and equity of redemption of every other defendant in the property involved.

In accordance with Title 28, U.S.C. § 2410, and the request of FmHA, the United States, acting through FmHA, shall have one year from the date of sale, to be scheduled, of the property involved within which to redeem same, providing the Government is not the purchaser at such sale.

3. That John Wilson and Georgia Wilson are justly indebted to Newark in the sum of $7,556.75 in accordance with the terms of a deed of trust dated August 22, 1978, with interest at the rate of 10% per annum from said date; that Newark, as prayed, is entitled to a judgment *in rem* against both John Wilson and Georgia Wilson and said judgment is a third lien on the property involved.

4. That the promissory note and the deed of trust executed by John and Georgia Wilson to Phillip D. Hout, trustee for W. F. Hurley, on January 8, 1975, in the sum of $7,180.75 and subsequently assigned to First National Bank of Newport, now First State Bank of Newport, should be canceled, set aside and held for naught.

5. The Court finds that it has jurisdiction over all the parties to this action and over the real and personal property which are the subject matter of this action.

6. George Pike, Jr., Esq., counsel for Federal, is requested to prepare a precedent for a judgment in accordance with the findings contained herein.

IT IS SO ORDERED.