# Federal Land Bank of Baltimore v. Heiser and American Bank & Trust Co. of Pa.

*J. Ross McGinnis, Steven M. Carr,* for plaintiff.
*Michael C. Fox,* for defendant.

HOFFER, *J.,* January 2, 1985—The Federal Land Bank of Baltimore obtained a judgment in its mortgage foreclosure action against Lewis and Mildred Heiser. Nine months later, the property was sold for $188,875.90 at a Sheriff's sale. The American Bank & Trust Co. of Pa., which holds a subsequent judgment lien against the Heiser's property, filed exceptions to the proposed schedule of distribution. These exceptions are now before the court.

## I.

American Bank excepts to Federal Land Bank's claim of $14,628.99 for interest from the date of judgment until the date of sale. Federal Land Bank computed the interest for this period by applying the interest rate specified in the mortgage agree-

ment.[1] American Bank contends that interest on a judgment must be computed according to Pennsylvania's lawful rate of six percent as specified in 42 Pa.C.S. §8101 and 41 Pa.C.S. §202. Federal Land Bank, on the other hand, contends that interest limitations do not apply to judgments in mortgage foreclosure when the lending bank is part of the Federal Farm Credit System, which is governed by the Farm Credit Act, 12 U.S.C. §2001 et seq. The disputed question is whether the Farm Credit Act preempts Pennsylvania's statute governing the interest rate on judgments.

Federal Land Bank has asserted that past decisional law requires a conclusion of preemption. Unquestionably, federal law preempts state laws governing interest rates and other terms in mortgage agreements when the lender is a Farm Credit System Bank. See, e.g., Fidelity Federal Savings & Loan Association v. De La Cuesta, 458 U.S. 141 (1982); Federal Land Bank of St. Louis v. Wilson, 533 F. Supp. 301 (E.D., Ark., N.D. 1982), aff'd, 719 F.2d 1367 (1983). Every decision that has so held, however, has been predicated upon a factual situation in which the terms of the mortgage agreement were challenged. Neither party has directed our attention to a case that has determined whether the Farm Credit Act's interest provisions preempt state laws governing interest on money judgments, and we have not been able to find such a case. The issue must be decided by applying general principles of constitutional law.

The Supremacy Clause of the United States Constitution provides that all laws of the United States shall be the supreme law of the land; thus, any state law that conflicts with a federal law is without ef-

---

1. The interest rate at time of default was 11.5 percent.

fect. State of Maryland v. State of Louisiana, 451 U.S. 725, 746 (1981). When examining a state law with respect to the Supremacy Clause, we start with the assumption that congress did not intend to displace state law. Id. A state law is not to be found in violation of the Supremacy Clause unless a direct and irreconcilable conflict exists between the state law and the federal law. Shapp v. Sloan, 27 Pa. Commw. 312, 324, 367 A.2d 791, 798 (1976). "That such a conflict between Federal and State law must not be lightly found is a concept deeply rooted in our federalist system of government, and such repugnance is not to be sought out where none clearly exists." Id. (Citations omitted). "Preemption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.' " Chicago & Northwestern Transportation Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317 (1981), quoting Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142 (1963), reh. denied, 374 U.S. 858 (1963).

Interest rates for Farm Credit System banks are governed by 12 U.S.C. §2205, which provides as follows:

"Interest rates on loans from institutions of the Farm Credit System shall be determined with the approval of the Farm Credit Administration as provided in this Act, notwithstanding any interest rate limitation imposed by any State constitution or statute or other laws which are hereby preempted for purposes of this Act." Section 2205 was intended to clarify the authority of Farm Credit System institutions under 12 U.S.C. §2015 to set interest rates without limitation by state law; it expressly preempts state limitations on interest rates on loans.

See H.R. Rep. No. 96-1287, 96th Cong., 2d Sess. 22, reprinted in 1980 U.S. Code, Cong. & Ad. News vol. 6, 7095, 7096, 7105. The statute is silent regarding interest rates on judgments in mortgage foreclosure when the mortgagee is a Federal Land Bank. Likewise, the available legislative history makes no mention of interest rates on judgments. It cannot be said, therefore, that Congress has "unmistakably ordained" preemption of state laws governing interest on judgments.

Neither can it be said that "the nature of the regulated subject matter permits no other conclusion." than preemption. The Farm Credit Act regulates the interest rate on loans made by Farm Credit System institutions. Application of both the federal statute and section 8101 of Pennsylvania's Judicial Code in the case at bar results in no inconsistency. The mortgage agreement was subject to interest rates as determined under 12 U.S.C. §2015. Once judgment was entered in favor of Federal Land Bank, however, it was entitled to no more than the state statutory interest rate on judgments.

The Farm Credit Act makes no provision for mortgage foreclosure proceedings by Federal Land Banks. Congress obviously intended Federal Land Banks to use state procedures for foreclosure and related proceedings, as Federal Land Bank of Baltimore did here. Since matters concerning real estate are of particular interest to the states, it is not surprising that Congress chose not to regulate extensively in this area. It confined itself to regulating interest rates in mortage agreements in order to prevent state usury laws from frustrating the purposes of the Farm Credit Act. All other matters related to foreclosure, including interest rates on judgments, are left to the states.

Federal Land Bank argues that a distinction exists between the terms "lawful" and "legal" rates of interest, and contends that the "legal" rate specified in 41 Pa.C.S. §202 does not apply here since 42 Pa.C.S. §8101 states that a judgment shall bear interest at the "lawful" rate from the date of judgment. Federal Land Bank has cited East Coast Management, Inc. v. McLaughlin, 533 F. Supp. 439 (E.D., Pa. 1982) as authority for its position that the post-judgment interest rate must be governed by federal law. East Coast Management concerned a judgment on a promissory note. When the plaintiff requested pre-judgment and post-judgment interest, the court held that the interest rate is governed by the law of the place where the obligation arose.

Federal Land Bank's reliance on East Coast Management is misplaced. The East Coast Management court found that the obligation which led to the suit arose in Maryland, and applied Maryland's *legal rate of interest*, as specified by Maryland state law, to the amount of the judgment. The court did *not* apply the interest rate specified in the note. If one were to analogize East Coast Management to the instant case, one would not conclude that the interest rate specified in the mortgage agreement should be used to calculate post-judgment interest; one would either conclude that Pennsylvania's legal interest rate applies, since the mortgage agreement was executed in Pennsylvania and concerned property located in Pennsylvania, or conclude that a "federal" legal interest rate should apply to the judgment. However, there is no "federal" legal interest rate. 28 U.S.C. §1961 provides that interest on a money judgment recovered in a U.S. District Court in a civil case shall be calculated at the rate allowed by the law of the state in which the federal court is located.

Thus, application of East Coast Management is of no benefit to Federal Land Bank in the case at bar.

Having concluded that the Farm Credit Act does not preempt 42 Pa.C.S. §8101, we hold that Federal Land Bank is entitled to interest on its judgment at the rate of six percent per annum, or a total of $7,330.14 for the period between the entry of judgment and the Sheriff's sale. Inasmuch as the Sheriff's proposed schedule of distribution awards Federal Land Bank an amount in excess of that figure, American Bank's exception is sustained.

## II.

American Bank also excepts to the attorney's commission awarded to Federal Land Bank in the proposed schedule of distribution. The mortgage agreement between Federal Land Bank and the Heisers provides that in a foreclosure action, Federal Land Bank may recover an attorney's commission of ten percent. American Bank contends that a ten percent commission is unreasonable because it considerably exceeds the actual costs and expenses incurred by Federal Land Bank. American Bank argues that the award of attorney's fees to Federal Land Bank should be reduced to actual and reasonable expenses.

Federal Land Bank asserts that American Bank, as a subsequent lien creditor, has no standing to challenge the attorney's commission absent a showing of fraud or collusion between mortgagor and mortgagee. Three Pennsylvania decisions have directly addressed this issue; the holdings in these cases support Federal Land Bank's position. In Zug v. Searight, 150 Pa. 506 (1892), the Pennsylvania

Supreme Court held that a subsequent judgment creditor has no standing to raise the issue of attorney's fees awarded to a creditor after a Sheriff's sale unless it can be shown that fraud or collusion was present. Absent fraud or collusion, only the debtor may challenge the amount of the attorney's commission. Bucks County Bank & Trust Co. v. Frey, 36 D.&C. 2d 382 (1965) concerned a subsequent judgment creditor who challenged the amount of attorney's fees awarded to the holder of the first mortgage after a Sheriff's sale. The court, considering itself bound by Zug v. Searight, held that the subsequent judgment creditor had no standing to contest the amount of attorney's fees absent fraud or collusion. In Scavo v. High Mount Lodge & Cottages, Inc. 54 D.&C. 2d 475 (1970), the court relied on Zug v. Searight and reached the same conclusion.

Since no recent Pennsylvania appellate decision has held otherwise, we follow the supreme court's holding in Zug v. Searight. American Bank alleged in its exceptions that the attorney's commission may have been determined through fraud of collusion on the part of Federal Land Bank and the Heisers. In its brief, however, American Bank conceded that it has been unable to discover facts to support its allegation of possible fraud or collusion. Federal Land Bank's Associate Manager-Credit stated in an affidavit that no employee of Federal Land Bank committed any act that could be construed as fraudulent or collusive regarding junior lien creditors. Nothing in the record suggests the existence of an agreement between Federal Land Bank and the Heisers which was intended to defraud subsequent creditors. Accordingly, we hold that American Bank does not have standing to chal-

lenge the ten percent attorney's commission award-
ed to Federal Land Bank.[2]

## ORDER OF COURT

And now, January 2, 1985, the American Bank &
Trust Co. of Pa.'s exception to the amount of post-
judgment interest awarded to The Federal Land
Bank of Baltimore in the proposed schedule of dis-
tribution is sustained. The Federal Land Bank of
Baltimore is entitled to interest on its judgment at
the statutory rate of six percent per annum for the
period between entry of judgment and the sheriff's
sale. The American Bank & Trust Co. of Pa. shall re-
ceive the $7,298.85 which The Federal Land Bank
of Baltimore claimed as additional interest.

The American Bank & Trust Co. of Pa.'s excep-
tion to the attorney's commission of $14,808.36
awarded to The Federal Land Bank of Baltimore in
the proposed schedule of distribution is overruled.

The Sheriff of Cumberland County is hereby or-
dered to distribute the funds invested pursuant to

2. Since American Bank has no standing to question the
amount of the attorney's commission awarded to Federal Land
Bank, it is not necessary to decide if the commission was un-
reasonable or excessive. Parenthetically, we note that the Su-
perior Court in Federal Land Bank of Baltimore v. Fetner, 269
Pa. Super. 455, 410 A.2d 344 (1979), U.S. cert. denied, 446
U.S. 918 (1980), held that an attorney's commission of ten
percent on a $117,500 debt was reasonable, and probably not
even fully compensatory for the bank's legal expenses. In ad-
dition, this court has held that a 15 percent attorney's commis-
sion on a $100,000 mortgage was reasonable. Dauphin Deposit
Trust Co. v. Tenny, 27 Cumberland L.J. 356 (1977). We also
note that the first mortgage agreement was a matter of public
record; it can be assumed that American Bank was aware of
the 10 percent attorney's commission term in the agreement
when it entered into its mortgage agreement with the Heisers.

the court order of August 29, 1983, as follows:
— To The Federal Land Bank of
    Baltimore                            $14,808.36
— To The American Bank &
    Trust Co. of Pa.                     $ 7,298.85
— Interest earned on the total amount invested is to be distributed between The Federal Land Bank of Baltimore and The American Bank & Trust of Pa. in proportion to the percentages of the principal sum to each.