NORTHAMPTON NATIONAL BANK vs. ATTORNEY GENERAL.

Hampshire.  October 12, 1979. — December 18, 1979.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Banks and Banking,* Open end credit plan. *Words,* "Finance charge."

A bank's proposed annual charge to credit card holders to cover the
    expenses of operating the credit card plan was not a finance charge
    within the meaning of G. L. c. 140, § 114B. [811-813]
General Laws c. 140, § 114B, does not prohibit a bank from collecting
    an annual charge from its credit card holders to cover the expenses
    of operating the credit card plan. [813-814]

CIVIL ACTION commenced in the Superior Court on
March 25, 1977.

The case was heard by *Hayer,* J., on a statement of
agreed facts.

*Richard A. Gross,* Assistant Attorney General (*Ed-
ward F. McLaughlin,* Assistant Attorney General, with
him) for the defendant.

*Edward D. Etheredge* for the plaintiff.

GRANT, J.  The plaintiff brought the present action in
the Superior Court for the purpose of securing a
declaratory judgment to the effect that the plaintiff's
collecting an annual charge of $5.00 from each of the
holders of a BankAmericard credit card issued under the
plaintiff's auspices would not be in violation of the provi-
sions of the first paragraph of G. L. c. 140, § 114B, as ap-
pearing in St. 1973, c. 273, § 1.[1]  The Attorney General

---

[1] "Notwithstanding the provisions of sections one hundred and one
hundred and fourteen A, a creditor may charge a daily, monthly or
other periodic rate of finance charge on loans made pursuant to an
open end credit plan as defined by subsection (r) of section one of
chapter one hundred and forty C, equivalent to but not in excess of

counterclaimed for a declaratory judgment to the contrary and has appealed from a judgment favorable to the plaintiff.[2] The following is a summary of the facts gleaned from the admissions contained in the Attorney General's answer to the complaint and from the statement of agreed facts on which the case was submitted to the trial judge.

The plaintiff is a national banking association with a usual place of business in Northampton.[3] It is an agent for Bank of America Service Corporation, which issues BankAmericard credit cards. The holders of such cards are entitled to various services, including the "opportunity to make purchases and pay for them within thirty

---

the following annual percentage rates determined in accordance with clause (*i*) of paragraph (1) of subsection (*a*) of section four of chapter one hundred and forty C: − (*a*) On so much of the balance as does not exceed five hundred dollars, eighteen per cent; (*b*) On so much of the balance as exceeds five hundred dollars, twelve per cent. A finance charge not in excess of fifty cents for a monthly or longer billing cycle or the pro rata part of fifty cents for a billing cycle shorter than monthly may be assessed if the finance charge otherwise assessable is less than fifty cents. For the purpose of this section, a billing cycle shall be considered to be monthly if the billing dates are on the same day of each month or do not vary by more than four days therefrom."

[2] The complaint also sought declaratory relief to the effect that the plaintiff's collecting the proposed charge would not be in violation of the provisions of a designated section of G. L. c. 255D. However, it is clear from the trial judge's findings, rulings and order for judgment that he was not in fact asked to make any ruling under any of the provisions of that chapter and that he did not do so. Accordingly, we confine ourselves to the question whether the plaintiff's collecting the proposed charge would be in violation of the present first paragraph of G. L. c. 140, § 114B.

[3] The plaintiff, as a national banking association, is bound by the provisions of G. L. c. 140, § 114B, to the same extent as any other "creditor" in making "loans" under an "open end credit plan" falling within the purview of that section. 12 U.S.C. 85 (1976 ed.). *Northway Lanes* v. *Hackley Union Natl. Bank & Trust Co.,* 464 F.2d 855, 862, 863-864 (6th Cir. 1972). *Partain* v. *First Natl. Bank,* 467 F.2d 167, 173-174 n.5 (5th Cir. 1972). *Fisher* v. *First Natl. Bank,* 548 F.2d 255, 258-261 (8th Cir. 1977). See *Acker* v. *Provident Natl. Bank,* 512 F.2d 729, 733-739 (3d Cir. 1975).

days of billing without charge."[4] In January of 1977 the plaintiff began notifying the holders of BankAmericard credit cards issued under its auspices that it was initiating a $5.00 "annual membership fee." The statement of agreed facts contains the following recitation: "The fee was not designed to cover new expenses that [the plaintiff] had incurred, or would incur: [a] [b]y reason of its providing, or offering to provide card holders with any new optional service or benefit, and/or, [b] [t]o meet any specific obligation imposed upon the [plaintiff] by any branch of government. . . . The fee was imposed by the [plaintiff] to increase income to cover increased expenses incurred in operating the BankAmericard credit card plan." A number of the credit card holders mailed in the $5.00 charge requested by the plaintiff. The Attorney General took the position that the charge was prohibited because the plaintiff was already charging the card holders the maximum finance charge permitted under G. L. c. 140, § 114B.[5] The plaintiff and the Attorney General agreed that pending a resolution of their dispute the plaintiff would segregate and hold in a separate account all the $5.00 fees which it had already received from its card holders, together with all such fees as might thereafter be received. The plaintiff then brought the present action against the Attorney General.[6]

In our view the appeal presents only two essential questions. The first is whether the plaintiff's proposed annual charge is a "finance charge" within the meaning of

---

[4] The record in this case fails to disclose the contractual arrangements between the plaintiff and the credit card holders, between the plaintiff and the vendors who subscribe to the plan, or between the vendors and the card holders. All the briefs proceed on the assumption that the plaintiff is participating in the operation of an "open end credit plan," as defined in G. L. c. 140C, § 1(r), as appearing in St. 1977, c. 52, § 6. We proceed on the same assumption.

[5] Other stated grounds of objection are no longer pressed or are rendered immaterial by our disposition of this case.

[6] The then Commissioner of Banks was also named as a defendant but at her request was dropped as a party.

the first paragraph of G. L. c. 140, § 114B (note 1, *supra*). We conclude that it is not.

Contrary to the view espoused by the plaintiff and apparently accepted by the trial judge, the meaning of the quoted words as employed in § 114B is not determined by the definition of the same words which is found in G. L. c. 140C, § 1(*q*), which refers to G. L. c. 140C, § 3. The only express references in the first paragraph of § 114B to any of the provisions of G. L. c. 140C are to those of G. L. c. 140C, §§ 1(*r*) and 4(*a*)(1)(*i*).[7] Recognition of that fact requires us to ascertain the meaning of the words "finance charge" in G. L. c. 140, § 114B, from the immediate context in which they are employed, including the only two provisions of G. L. c. 140C to which the first paragraph of § 114B refers. That process impels the conclusion that the "finance charge" contemplated by that section is an amount of money which (except in the limited situation specifically described  in the second sentence of § 114B) is computed with reference and bears a direct relationship to the unpaid balance of "loans made pursuant to an open end credit plan."[8] The conclusion on this branch of the case is that the plaintiff's proposed annual charge is not a "finance charge" within the meaning of G. L. c. 140, § 114B, because it bears no relationship, direct or otherwise, to any unpaid balance. Indeed, the plaintiff appears bent on col-

---

[7] If the Legislature had wished to incorporate into G. L. c. 140, § 114B, the definition of "finance charge" which is found in G. L. c. 140C, § 3, it already had at hand the language necessary to accomplish that objective in unmistakable fashion.  See the amendment of G. L. c. 255D, § 1, which was effected by St. 1969, c. 517, § 25, and which defined the words "finance charge" for the purposes of G. L. c. 255D as "the cost of credit determined in accordance with the provisions of section three of chapter one hundred and forty C."

[8] A layman might well conclude that the "finance charge" is simply the amount of interest he will have to pay on so much of the total amount he has borrowed as is not repaid by the due date set out in his periodic bill.

lecting the charge without regard to whether the holders of the credit cards ever make any use of the cards.

The second essential question raised by the appeal is whether the plaintiff's proposed annual charge is prohibited by the first paragraph of G. L. c. 140, § 114B, or by any other relevant provision of law. We conclude that this question must also be answered in the negative.

Nothing on the face of § 114B purports to prohibit the operator of an open end credit plan from collecting a charge in addition to the prescribed "finance charge." That section in its original form (see St. 1972, c. 783, § 1) was inserted in the General Laws at a point immediately following the provisions of G. L. c. 140, §§ 96-114A, which were (and still are) distinctly concerned with regulating the amounts of interest and particular charges which could (and can) lawfully be collected on loans of $3,000 or less (see, *e.g., Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.,* 377 Mass. 282 [1979]) and which contained (and still contain) express prohibitions against a lender's collecting other charges on such loans unless specifically permitted by the small loans regulatory board. See, e.g., the provisions of the last two sentences of G. L. c. 140, § 100, as appearing in St. 1956, c. 689, § 4, and the first two sentences of G. L. c. 140, § 114A, as appearing in St. 1962, c. 795, § 3. General Laws c. 140, § 114B, regulates the amount of the "finance charge" which can lawfully be collected by the operator of an open end credit plan, but, in sharp contrast with the provisions of the immediately preceding §§ 96-114A, contains no prohibition against the operator's collecting an additional charge. Indeed, the opening words of § 114B, as originally inserted by St. 1972, c. 783, § 1, were "[n]otwithstanding the provisions of sections one hundred and one hundred and fourteen A"; those words have persisted until the present.

Neither of the parties has referred us to, nor have we found, any other statutory provision which sheds light on the question whether G. L. c. 140, § 114B, was intend-

ed to prohibit the collection of a charge such as that proposed by the plaintiff. The Attorney General points to what he regards as legislative rejection of § 1 of 1972 House Doc. No. 1282, which, if enacted, would have expressly authorized the collection of a charge which resembles that proposed by the plaintiff "[i]n addition to the charges for interest, expenses and other considerations permitted by [G. L. c. 140, §§ 96-114A] . . . in connection with any loan made under [§§ 96-114A], inclusive." As the Attorney General agrees in his brief, all the provisions of §§ 96-114A were (and are) concerned with closed end credit, while § 114B is directed to open end credit and is the only section of G. L. c. 140 which is expressly concerned with that subject. In short, there is room for doubt whether § 1 of the bill relied on by the Attorney General was even addressed to the question now under consideration. We think it much more likely that § 114B in its original form represented a legislative synthesis of the concepts underlying § 1 of 1972 House Doc. No. 5718 and § 2 of 1972 House Doc. No. 3106. Both those sections were specifically directed to open end credit, as opposed to closed end loans made under G. L. c. 140, §§ 96-114A.

After careful consideration we conclude that the plaintiff's collecting the proposed charge from its BankAmericard credit card holders would not be in violation of the first paragraph of G. L. c. 140, § 114B, as appearing in St. 1973, c. 273, § 1. In reaching this conclusion we recognize that if the plaintiff and others similarly situated can demand and collect an annual charge of $5.00, they can also demand and attempt to collect successively higher annual charges; but we hold to the view that any prohibition or regulation of such charges should come from the Legislature rather than from a court.

The final judgment entered below is unnecessarily broad and should be modified so as to confine its declarations to ones made under the present first paragraph of G. L. c. 140, § 114B. As so modified, the judgment is affirmed.

*So ordered.*