Banco de Ponce, Banco Popular de Puerto Rico y Citi-bank, N.A., demandantes y recurridos, *v.* Departamento de Asuntos del Consumidor, demandado y peticionario.

*Número:* O-83-2 *Resuelto:* 23 de marzo de 1983

*Ángel M. Villamil Rodríguez,* abogado del Departamento de Asuntos del Consumidor, peticionario; *Alex González,* abogado del recurrido Banco de Ponce; *Vicente Zayas Puig,* de *Zayas Puig & Arzuaga Algarín,* abogado del recurrido Banco Popular de Puerto Rico; *Samuel T. Céspedes,* de *McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz Suria,* abogado del Citibank, N.A.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Por resolución de 15 junio, 1982 el Departamento de Asuntos del Consumidor (DACO) declaró ilegal la cuota anual cobrada por los Bancos recurridos por expedición de tarjetas de crédito, al concluir que la misma es un "cargo por financiamiento" no permitido por la Ley de Ventas a Plazos y Financiamiento, 10 L.P.R.A. sec. 731 *et seq.,* y su Reglamento. El Tribunal Superior revocó la decisión administrativa y la agencia ha recurrido en *certiorari.* Toda vez que los Bancos recurridos han presentado oposición fundada a la expedición del auto, estamos en condición de resolver por vía expedita.

El contrato bancario atípico de *apertura de crédito,* en sus dos fases: 1ª disponibilidad del crédito a favor del usuario; y 2ª uso o utilización efectiva de ese crédito por parte del usuario(1) se manifiesta con claro relieve en la

---

(1) Este contrato de apertura de crédito es uno ". . . por el cual el Banco se

definición del concepto "tarjeta de crédito" introducida e incorporada por la Ley Núm. 9 de 4 marzo, 1976 (²) a la Ley sobre Ventas a Plazos y Compañías de Financiamiento, 10 L.P.R.A. sec. 731(22), que dice:

> (22) *"Tarjeta de crédito"*. Significa cualquier instrumento u objeto conocido como tarjeta de crédito, placa, libro de cupones o por cualquier otro nombre, expedido *con o sin el pago de un cargo por quien la recibe,* para el uso del tenedor en la obtención o adquisición a crédito de dinero, bienes, servicios o cualquier otra cosa de valor en el establecimiento del emisor de la tarjeta de crédito o en cualquier otro establecimiento. (Énfasis nuestro.)

obliga dentro del límite pactado y mediante una comisión que percibe del cliente, a poner a disposición de éste, y a medida de sus requerimientos, sumas de dinero o a realizar otras prestaciones que le permitan obtenerlo al cliente". Joaquín Garrigues, *Contratos Bancarios,* 2da ed., Madrid, Imprenta Aguirre, 1975, pág. 185.

"En una primera fase el contrato engendra una pura *disponibilidad* a favor del acreditado. Esta disponibilidad es algo parecido a un derecho de crédito. Quien tiene el derecho de disposición no es propietario de la suma de la que puede disponer; pero aspira a serlo. Y lo será en cuanto ponga en obra su derecho de disposición. La disponibilidad tiene en la apertura de crédito un sentido especial que la hace distinta de la disponibilidad inherente a todo derecho de crédito. Consiste la diferencia en que, así como en los demás derechos de crédito el deudor puede liberarse de su deuda, aun contra la voluntad del acreedor, consignando la suma debida, en la apertura de crédito el Banco no puede liberarse de su deuda, sino que tiene que esperar los actos de disposición, es decir, las órdenes del acreditado.

"En una segunda fase el contrato permite una *disposición efectiva* a favor del acreditado. Este es el efecto eventual del contrato, así como es necesario e ineludible el efecto primeramente anotado, es decir, el de la pura disponibilidad." (Énfasis en el original.) Garrigues, *op. cit.,* págs. 192–193.

La *comisión de apertura* de crédito que el *acreditado* ha de satisfacer al Banco, corresponde a la primera fase. Rodrigo Uría, *Derecho Mercantil,* 10ma ed., Madrid, Imprenta Aguirre, 1975, pág. 639.

(²) En su Exposición de Motivos esta Ley específicamente preserva el concepto original de la tarjeta de crédito al expresar:
"Se ha definido el término 'tarjeta de crédito' para conformarlo a la definición de la Ley 94 del 24 de junio de 1971 que prohíbe la expedición, emisión o distribución de tarjetas de crédito a personas que no las hayan solicitado por escrito y limita la responsabilidad de los tenedores de dichas tarjetas en caso de uso no autorizado de las mismas. Además, la definición de tarjeta de crédito que incluimos se conforma a la del Código Penal recién aprobado, Ley 115 del 22 de julio de 1974."

■ En concordancia con esta adición, la misma Ley Núm. 9 de 1976 reformó la definición de "Plan de cuentas rotativas" del inciso 19 de la Ley Núm. 68 de 19 junio, 1964 (Ventas a Plazos y Financiamiento) para incluir la reglamentación de la tarjeta sin afectar su naturaleza esencial de evidencia y concreción de contrato de *apertura de crédito*, con el siguiente texto:

(19) *"Plan de cuentas rotativas y tarjetas de crédito"*, significa un contrato entre un vendedor al por menor a plazos o un emisor de tarjetas de crédito y un comprador al por menor a plazos o un emisor de tarjetas de crédito y un comprador al por menor en el cual se establecen los términos de las transacciones a ser hechas periódicamente en consonancia con dicho contrato; o un contrato para el uso de una tarjeta de crédito; según el cual ni el vendedor ni el emisor de dicha tarjeta de crédito retiene título o gravamen sobre la mercancía adquirida por el comprador. El balance adeudado por el comprador es pagadero a plazos en cierto período de tiempo y bajo los términos del contrato. *El cargo por financiamiento habrá de computarse mensualmente, en relación con el balance adeudado por el comprador.* (Énfasis nuestro.)

■ El cargo por financiamiento se impone en la *segunda fase* del contrato que se alcanza cuando el usuario o tenedor de la tarjeta utiliza efectivamente el crédito. El cargo no afecta la primera fase que se limita a *disponibilidad* del crédito y que se cumple unilateralmente por el banco expedidor de la tarjeta *"con o sin* el pago de un cargo por quien la recibe". Mientras no la use, mientras no la ofrezca para obtener dinero, mercancía o servicios, es un instrumento pasivo en sus manos, y no habrá obtenido crédito alguno por ella sobre el que efectivamente opera el cargo por financiamiento. El Art. 101 inciso 10 de la citada Ley Núm. 68 de 1964, *supra*, define "cargo por financiamiento" como el total de todos los cargos que pagará el *comprador* por la *obtención del crédito*. Este es un cargo que se impone al *comprador*, a su vez definido en el inciso 4 del mismo estatuto, según enmendado en 1976, como "toda per-

sona que compre mercancía, obtenga servicios, dinero en efectivo o valor equivalente de un vendedor al por menor bajo un contrato de venta al por menor a *plazos*". (Énfasis nuestro.) Mientras el tenedor de la tarjeta bancaria no haga uso de la disponibilidad de crédito que ésta provee y se convierta en "comprador", mientras no ocurra una real y efectiva tradición de bienes o servicios de vendedor a comprador viabilizada por la tarjeta, no puede haber el cargo por financiamiento a que se refiere la Ley. A la misma conclusión lleva el transcrito inciso 19, en su disposición de que el balance adeudado por el *comprador* es pagadero *a plazos* y que el cargo por financiamiento debe *computarse mensualmente*, en relación con el balance adeudado por él. La transición de simple tenedor de tarjeta a comprador de bienes o servicios es indispensable para que surja el *financiamiento* reglado por esta legislación. La citada Ley Núm. 68 de 1964 no se propuso regular la emisión o expedición de la tarjeta de crédito en sí, sino *su uso* en las ventas a plazos.

 En su argumento el recurrente enlaza el costo anual de la tarjeta de crédito con las facultades de la Junta Reguladora del Crédito en Ventas al Por Menor a Plazos y de Compañías de Financiamiento, 10 L.P.R.A. sec. 773(8), y la prohibición de incluir en el contrato de venta al por menor y a plazos cargos por financiamiento mayores que los autorizados por dicho organismo, 10 L.P.R.A. sec. 750, mas esta misma sección limita el cargo por financiamiento a "todos los cargos incidentales a la investigación y otorgamiento de un contrato [de venta a plazos] y para la extensión de crédito bajo el mismo", y advierte que "[n]o se cobrará, recibirá, reservará, o contará ningún cargo, gasto o exacción adicionales a los autorizados en este Capítulo". Los honorarios de abogado, por ser tal cargo incidental al contrato de venta a plazos, sí están sujetos a regulación como costo de financiamiento, y esto es todo lo que resuelve *USI P.R., Inc.* v. *A.A.E.E.* 101 D.P.R. 122 (1973). Si como hemos concluido la entrega o venta de la tarjeta por sí sola

no constituye "cargo por financiamiento" bajo el estatuto especial que examinamos, no es materia sujeta a regulación por la Junta en ausencia de legislación específica. [3]

La emisión o entrega de la tarjeta, como hemos dicho, es de por sí un contrato de apertura de crédito, independiente y separado de la venta a plazos por lo que su costo no puede calificarse como cargo *incidental* en este último caso. La simple posesión de la tarjeta representa para el acreditado un valor de disponibilidad, aun cuando no llegue a hacer uso de ella. El ingreso de la tarjeta de crédito de 1974 [4] a la Ley Núm. 68 de 1964 (Ventas a Plazos y Financiamiento) preservó su naturaleza original al incorporarse con la misma definición del primer estatuto de su reglamentación. Ley Núm. 94 de 24 junio, 1971 (10 L.P.R.A. sec. 995 y ss.). Su exclusión, por los preceptos analizados, del tipo de actividad regulada por la Junta, no permite incluir su costo (cuota) como cargo de financiamiento por extensión de crédito, bajo el contrato de venta a plazos. [5] La senten-

---

[3] Los reglamentos e interpretaciones de la Junta de Gobernadores de la Reserva Federal relacionados con el *Truth-in-Lending Act* y las decisiones judiciales no consideran "cargo por financiamiento" la cuota anual exigida por el privilegio de pertenecer a un plan de tarjetas de crédito, independientemente de que el tenedor use o no la tarjeta. *Key* v. *Worthen Bank & Trust Co., N.A.*, 543 S.W.2d 496 (1976); *Northampton Nat. Bank* v. *Att. Gen.*, 397 N.E.2d 1149 (1979).

En memorando de 30 mayo, 1980 del Lic. Rivas Rivas, Asesor Legal de DACO, que identifica el concepto "cargo por financiamiento" en nuestra Ley con el de *Truth-in-Lending Act*, se sostiene que el *costo* de la tarjeta no es tal cargo, sino condición para participar en un plan de crédito, use o no el tenedor su tarjeta para obtenerlo; y que la expedición de la tarjeta y el cobro de cuota no es incidental a la extensión de crédito. El criterio de interpretación norteamericano coincide con las dos fases de *disponibilidad* y *uso* del crédito que señalan los comentaristas latinos aquí citados.

[4] Mediante enmienda por Ley Núm. 9 de 4 marzo, 1976 (10 L.P.R.A. sec. 731(19) y (22)).

[5] Nótese cómo la propia Ley Núm. 68 de 1964 mantiene la individualidad de la tarjeta de crédito, aun en la cláusula genérica (*omnibus*) al disponer en su Art. 403(8), 10 L.P.R.A. sec. 773(8), que la Junta tendrá facultad "[p]ara establecer cargos por cualesquiera otros conceptos a que diere lugar la compra de mercancía o servicios al por menor a plazos, o la adquisición del contrato de venta al por menor a plazos o intereses sobre los mismos".

En *USI P.R., Inc.* v. *A.A.E.E.*, 101 D.P.R. 122, 129 (1973), consideramos esta

cia recurrida capta el correcto sentido de independencia y separabilidad entre uno y otro contrato al expresar:

> Ciertamente la Ley Núm. 68, *supra*, regula los cargos relacionados con la compra de mercancía y servicios a crédito, pero no aquellos que no están relacionados con la utilización de crédito, como son las otras diversas facultades y usos de las tarjetas bancarias de crédito. Entre esos usos (susceptibles de ser variados de tiempo en tiempo según las exigencias de la competencia y el mercado) se encuentran el de la obtención de adelantos en efectivo (*) y otros usos no reglamentados por ley, a saber: depósito o garantía para alquilar automóviles o para admisión a hospitales o reservaciones en hoteles, economiza cargos bancarios por la expedición de cheques, consolida los gastos mensuales, referencia de crédito e identificación.
>
> Interpretar la Ley Núm. 68, *supra*, como pretende DACO, conlleva limitar toda posibilidad de que se añadan otros atributos a las tarjetas bancarias de crédito que no estén relacionados con la compra de mercancía y servicios a crédito y conlleva atribuirle a la Ley Núm. 68 una amplitud y alcance que no fue considerada por el legislador y que no se sostiene de la lectura armoniosa del articulado total de dicha Ley. [(6)]

---

disposición residual cuyo propósito es "darle a la Junta facultades dentro del mayor ámbito de la *actividad de ventas al por menor a plazos*" criterio compatible con la reconocida independencia del contrato de apertura de crédito o expedición de tarjeta bancaria, de las citadas ventas a plazos. (Énfasis nuestro.) Independencia que destaca Garrigues al sostener que "el acreditado asume, ya en el momento de la perfección del contrato, la obligación de pagar una comisión al Banco 'hágase o no uso total o parcial del crédito concedido'". (Énfasis del autor.) *Op. cit.*, pág. 194.

Nótese, además, que las tasas de interés y cargos por financiamientos máximos sobre adelantos en efectivo en tarjetas de crédito también se establecen en legislación aparte de la de ventas a plazos. Ley Núm. 3 de 14 junio, 1980 (10 L.P.R.A. sec. 998n(C)(1)).

(*) Este uso está fuera del ámbito de la Ley Núm. 68, *supra*, estando reglamentado por la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento al amparo de la Ley Núm. 1 del 15 de octubre de 1973, según enmendada por la Ley Núm. 3 del 20 de marzo de 1980, 10 L.P.R.A. 998 *et seq.*

(6) "La distinción que hemos hecho en este caso entre la etapa de la disponibilidad del crédito y la etapa de su utilización efectiva, distinción ampliamente reconocida por los comentaristas, hace sentido en contratos de cuenta rotativa y de tarjetas de crédito, (entre otros) donde hay una decisión original de conceder el

Cualquier interpretación contraria nos enfrentaría a un conflicto entre las disposiciones contenidas en las definiciones de "plan de cuentas rotativas y tarjetas de crédito", "tarjeta de crédito", "cargo por financiamiento" y "tasa de por ciento anual", según antes hemos visto, y las disposiciones contenidas en los mencionados artículos 210 y 403 de la Ley.

■ La agencia recurrente no ha podido superar la contradicción básica en su teoría: que la propia definición de tarjeta de crédito (inciso 22, *supra*) autoriza la cuota que DACO declara ilegal.

Con estos antecedentes y fundamenos *se expide el auto a tenor de la Regla 50 de nuestro Reglamento al solo efecto de declarar la resolución revisada, confirmada.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Dávila se inhibieron.

crédito y luego una *utilización repetida* (o al menos una potencial utilización repetida) de ese crédito." (Énfasis en el original.) Esc. 10, S. Tribunal Superior.